IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES LEE HARRIS,

        Petitioner,

vs.                                                     No. CIV 99-443 LH/LFG

JOE R. WILLIAMS,

        Respondent.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1. This is a proceeding on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed April 22, 1999. Respondent filed his Answer on June 2, 1999. Petitioner James Lee Harris ("Harris"), currently incarcerated in the Lea County Correctional Facility in Hobbs, New Mexico, challenges the judgment and sentence entered by the Fifth Judicial District Court in State v. Harris, No. CR-96-157 (County of Chaves, New Mexico).

2. Following a jury trial, Harris was convicted of second degree murder, breaking and entering, and tampering with evidence. He was found to be a habitual offender and was sentenced to thirty-one years imprisonment, followed by two years parole. His conviction was affirmed on appeal, and his state petition for habeas corpus relief was denied.

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommenda-tions. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

3. Harris presents the following grounds for federal habeas review:

Claim One: Harris was denied a fair and impartial trial because the trial judge neglected to recuse himself, in spite of the fact that he was had served in the National Guard with the victim of the crime;

Claim Two: The district attorney engaged in prosecutorial misconduct involving use of perjured testimony and withholding of exculpatory evidence;

Claim Three: The trial court violated due process in failing to instruct the jury on voluntary manslaughter;

Claim Four: His trial counsel was ineffective in that he advised Harris to testify and give incriminating evidence against himself, and appellate counsel was ineffective in failing to raise this issue on appeal;

Claim Five: His trial counsel was ineffective in failing to call certain witnesses to testify and failing to introduce certain items of evidence;

Claim Six: His conviction was obtained in violation of double jeopardy principles.

4. Respondent concedes, and this Court finds, that Harris has exhausted his available state remedies and the petition is properly before the Court. Respondent contends that Harris has failed to state a constitutional claim and has provided no factual grounds to justify habeas relief. In addition, Respondent asserts that Harris procedurally defaulted Claim Four, in that he failed to raise the issue either on direct appeal or in his state habeas corpus petition and is now precluded from doing so.

**Facts and Procedural History**

5. Harris was originally charged in a five-count criminal information with first degree murder,

aggravated burglary (two counts), false imprisonment, and tampering with evidence. (Record Proper, at 001; hereafter cited as "RP"). He was ultimately convicted of second degree murder, breaking and entering, and tampering with evidence.

6. The conviction arose from an incident on March 8, 1996, which began when Harris broke into the mobile home of his girlfriend, Mary Simmons ("Simmons"), at a time when he was under a restraining order prohibiting him from being at her residence. Simmons was lying on her bed with the murder victim, Paul Scarberry ("Scarberry"), when Harris broke in. Scarberry jumped Harris, and Harris stabbed him several times with one of two knives that were used to hold the bedroom door shut. Harris thereafter took Scarberry's body and dumped it in a remote location.

7. Proceeding with new counsel on appeal, Harris raised two issues. He asserted, first, that the trial court erred in refusing to give an instruction on voluntary manslaughter, and second, that the breaking and entering conviction was invalid in that either there was insufficient evidence to convict him on this charge or, in the alternative, that the conviction violated double jeopardy. Both grounds were rejected by the New Mexico Court of Appeals, and the New Mexico Supreme Court denied certiorari. (Exhibits B, C to Answer).

8. Harris then filed a *pro se* petition for habeas corpus in which he alleged that his attorney was ineffective in failing to conduct any pretrial investigation, that the prosecutor failed to reveal exculpatory information and knowingly used perjured testimony against him, and that the trial judge was partial in that he knew the victim Scarberry, having served with him in the National Guard.

9. The trial judge dismissed the habeas petition, finding that Harris' attorney performed ably, and that Harris failed to present any factual basis to establish the nature of the exculpatory evidence allegedly withheld, or any details of how the prosecution "endorsed perjured testimony." Certiorari

was denied by the New Mexico Supreme Court.

10. In this federal petition, Harris asserts the same issues which he previously raised, either on direct appeal or in the state habeas proceedings. In addition, he asserts a new ground in Claim Four: that his attorney was ineffective in advising him to testify and thereby incriminate himself.

### Procedural Default of Claim Four: Ineffective Assistance in Advising Harris to Testify

11. Respondent asserts that Harris procedurally defaulted Claim Four, in which he alleges his conviction was obtained in violation of the privilege against self-incrimination, and that he was deprived of effective assistance of counsel on this issue both at trial and on appeal. He claims that his trial attorney told him to take the stand and tell the truth, essentially advising him to give incriminating evidence against himself. He also claims that his appellate counsel was ineffective in failing to raise the issue in his appeal in state court.

12. At the state level, Harris did not mention the self-incrimination claims, nor did he rely on this ground in arguing ineffective assistance, either on appeal or in postconviction proceedings (Petition, at 10a; Answer, Exs. B and D). Harris is now precluded from raising such claims in any further proceedings in state court, since the New Mexico courts will not consider in a second postconviction proceeding any grounds which could have been, but were not, asserted in the first proceeding. "Such grounds omitted in the prior proceedings are deemed waived." State v. Gillihan, 86 N.M. 439, 440, 524 P.2d 1335, 1336 (1974); *see also*, Faulkner v. State, 86 N.M. 715, 526 P.2d 1308 (Ct. App. 1974); Cisneros v. State, 88 N.M. 368, 540 P.2d 848 (Ct. App. 1975). Harris's failure to raise these issues in state court constitutes an "adequate and independent state procedural ground" which bars consideration of these claims on federal habeas corpus. Jackson v. Shanks, 143

4

F.3d 1313, 1318 (10th Cir.), *cert. denied*, 525 U.S. 950, 119 S. Ct. 378 (1998); Guzman v. Williams, 185 F.3d 874 (Table, text in Westlaw), No. 98-2172, 1999 WL 430059. at * 3, n.5 (10th Cir. June 28, 1999).

13. An exception to New Mexico's waiver rule applies when the petitioner asserts "fundamental error" in his trial. Gillihan, 86 N.M. at 441. This is a narrow exception, however. In Wiggins v. Moriarity, 145 F.3d 1347 (Table, text in Westlaw, No. 97-2208), 1998 WL 244028, at *2 (10th Cir. May 14, 1998), the Tenth Circuit rejected the District Court's determination that a particular claim was not procedurally defaulted because petitioner could still raise the claim in a second state habeas petition by asserting fundamental error:

> Claims of fundamental error are considered only to avoid a miscarriage of justice or a result which shocks the judicial conscience . . . The New Mexico Court of Appeals already has determined, in connection with appellant's ineffective assistance of counsel claim, that [appellant fully understood the range of sentences possible and was sentenced in accordance with state law] . . . Given these findings, which were undisturbed on state certiorari review, we conclude the New Mexico courts would not consider appellant's new issue on the basis of fundamental error.

14. The same is true in the present case. In the decision on Harris' state habeas petition, the district court judge who tried the case praised counsel's performance in general, stating that he "aggressively represented" Harris and was "very effective" in getting the first degree murder charge reduced to second degree, and in having the jury acquit on charges of aggravated burglary and false imprisonment. (Order Dismissing Petition for Writ of Habeas Corpus, Ex. E to Answer). Given these findings, undisturbed on certiorari review, and the fact that New Mexico courts have held that an attorney's advice to testify does not provide a basis for postconviction relief, Barela v. State, 81 N.M. 433, 436, 467 P.2d 1005, 1007 (Ct. App. 1970), this Court concludes that the New Mexico

5

courts would not allow Harris to bring a second habeas petition alleging fundamental error based on his counsel's advice to take the stand.[2]

15. Furthermore, Harris has not demonstrated adequate "cause and prejudice" to excuse his failure to raise the self-incrimination / ineffective assistance issue, either on appeal or in his state habeas petition. *See*, Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995). The factual predicate of his claim against trial counsel was available to him at the time of his appeal. He had new counsel on appeal and thus was not deprived of the opportunity to develop facts relating to trial counsel's performance, in contrast to the petitioner in Jackson v. Shanks, *supra*.

16. Harris claims that his appellate counsel was also ineffective in failing to raise this issue, but the facts underlying the claim against appellate counsel were known to him at the time he filed his state habeas petition. He gives no explanation for his failure to raise these claims in state court when he had the opportunity, particularly in light of his assertion that "this Claim is basically the body of Petitioner's defense." (Petitioner's Reply to Respondent's Answer [Doc. 11], at 1). Therefore, the Court finds that Harris has procedurally defaulted Claim Four, and that claim will be dismissed.

## Alleged Bias of Trial Judge

17. Petitioner alleges in Claim One that he was denied a fair and impartial trial when the trial judge neglected to recuse himself when he realized he was acquainted with the murder victim, having served with him in the National Guard.

18. The claim that the victim and the trial judge served together in the National Guard was

---

[2] Having found that Harris procedurally defaulted and has no avenues for further exhaustion at the state level, the Court rejects Harris' suggestion, raised in his Reply [Doc. 12], that he be allowed to return to state court in order to exhaust this claim.

6

raised in Harris' habeas petition in state court. (Answer, Ex. D, at 5-6). In dismissing the petition, District Judge William P. Johnson stated, "Petitioner has failed to present any evidence that the undersigned District Judge was ever in the New Mexico Army National Guard [footnote] or that the Victim was ever in the New Mexico Army National Guard . . .." In the footnote, the judge added, "Petitioner will find it difficult to present any evidence that the undersigned District Judge served in the New Mexico Army National Guard since the undersigned District Judge never served in the New Mexico Army National Guard." (Answer, Ex. E, at 4).

19. In his petition for writ of habeas corpus at the state level, Harris alleged that the trial judge had a "prior association" with Scarberry based on their serving at the same time "in the reserve or national guard." (Exhibit D to Answer, at 6). In its Response to this petition, the State noted that it recalled the judge mentioning in court, late in the course of the trial, that he had found out that he had served in the Naval Reserve at the same time as Scarberry but that he did not remember ever having met him.[3]

20. Under New Mexico law, a judge should recuse himself in a proceeding in which his impartiality might reasonably be questioned, including instances in which he has a personal bias or prejudice concerning a party. Rule 12-400 (A), N.M.R.A. (2000) (Rules of Judicial Conduct). A judge is required to exercise his judicial function, except in those cases where his impartiality might reasonably be questioned, Gerety v. Demers, 92 N.M. 396, 589 P.2d 180 (1978), and the decision whether to recuse is placed within the conscience and discretion of the trial judge. Martinez v. Carmona, 95 N.M. 545, 624 P.2d 54 (Ct. App. 1980).

---

[3] This Response is included in the Record Proper, in unnumbered pages following the last numbered page, 136.

21. Because "the presumption of impartiality [is] the linchpin of judicial authority and legitimacy,"[4] a party's right to fundamental fairness guaranteed by the due process clause is violated if the judge who hears the case is biased. Wyatt v. United States, 591 F.2d 260, 266 (4th Cir. 1979). However, there is a substantial burden on the party alleging bias to demonstrate that a judge is not impartial. United States v. Burger, 964 F.2d. 1065, 1070 (10th Cir. 1992). Mere conclusory assertions of bias are not sufficient. United States v. $11,557.22 in U.S. Currency, 198 F.2d 260 (Table, text in Westlaw), No. 99-1196, 1999 WL 820230, at *4 (10th Cir. Oct. 14, 1999).

22. In the present case, Harris alleges that the trial judge was acquainted with the victim. He provides no proof of this other than his own assertion. There is some indication on the record that the judge may have served in the Naval Reserve at the same time as Scarberry; however, there is nothing to establish that they were acquainted with each other, or indeed that the judge had ever seen Scarberry. The judge did not abuse his discretion in failing to recuse himself under these circumstances, and this Court cannot say that his ruling in connection with the state habeas petition involved an unreasonable application of clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §2254(d); Smallwood v. Gibson, 191 F.3d 1257, 1264-65 (10th Cir. 1999).

**Prosecutorial Misconduct**

23. Harris alleges in Claim Two that the prosecutor knowingly used the perjured testimony of Simmons, on two issues. He asserts that her trial testimony regarding self defense differed from her original statements to police, and he says that she was allowed to present perjured testimony to

---

[4] Mark Andrew Grannis, Safeguarding the Litigant's Constitutional Right to a Fair and Impartial Forum: A Due Process Approach to Improprieties Arising from Judicial Campaign Contributions from Lawyers, 86 Mich. L. Rev. 382, 389 (1987)

8

the effect that she was held hostage in the days following Scarberry's death, when in fact she was free to come and go as she pleased.

24. To justify habeas relief on grounds of prosecutorial misconduct, Harris must show that the prosecutor's actions, when viewed in the overall context of the trial, were "so egregious as to render the trial fundamentally unfair," Jackson v. Shanks, at 1322, *citing* Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871 (1974), and "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Hoxsie v. Kerby, 108 F.3d 1239, 1243 (10th Cir.1997).

25. Knowing use of perjured testimony by the prosecution violates a defendant's due process rights. United States v. Wolny, 133 F.3d 758, 762 (10th Cir. 1998). However, the petitioner has a "high burden" in showing that the prosecution knew that the testimony was false, and the question of whether a witness testified truthfully is generally a credibility issue within the province of the jury. Bankert v. Shanks, 149 F.3d 1190 (Table, text in Westlaw), No. 97-2170, 1998 WL 255043, at *3 (10th Cir. May 15, 1998), *cert. denied*, 525 U.S. 950, 119 s. Ct. 378 (1998). Contradictions and changes in a witness' testimony are not uncommon and do not necessarily create an inference, "let alone prove," that the prosecution knowingly presented perjured testimony, and "presentation of a witness who recants or contradicts his prior testimony is not to be confused with eliciting perjury." Tapia v. Tansy, 926 F.2d 1554, 1563 (10th Cir. 1991).

26. Evidence that Simmons was not a hostage is not relevant to any charge for which Harris was convicted. He was originally charged with two counts of false imprisonment but was not convicted on either of those charges; thus, any prosecutorial misconduct involving perjured testimony on this issue could not have prejudiced Harris. To the extent he cites this testimony as relevant to

9

the charge of tampering with evidence, in the sense that he prevented Simmons from contacting police following Scarberry's death, the Court finds that the evidence on the tampering charge was so overwhelming that the Simmons' "hostage" testimony, even if perjured at the behest of the prosecutor, would have had no effect on the outcome.[5] Jackson v. Shanks, at 1322 ("In light of the considerable evidence implicating Mr. Jackson in the murder and robbery, we believe the [prosecutorial misconduct] did not fundamentally impair the jury's ability to judge the evidence fairly [internal quotation marks omitted]").

27. Harris implies that when Simmons first contacted the police, she told them a different story than the one she told on the witness stand, and that her first statement painted a stronger picture of self-defense. He argues that the prosecutor engaged in misconduct in allowing Simmons to "drop off" exculpatory parts of her testimony before telling her story to the jury. Harris does not give any specifics as to how Simmons' original statement to the police differed from her testimony at trial. The Affidavit for Criminal Complaint (RP, at 008-017), prepared by Officer Joe Burcar of the Roswell Police Department, states that on March 22, 1996, Simmons told him that Harris broke into her trailer through the rear door at approximately 6:00 a.m. on March 8, and "made contact" with her and Paul Scarberry. She said further that Harris was under a temporary restraining order at the time of the break-in, which prohibited him from being in the residence. She said that Harris was jealous because of the presence of Scarberry, that he armed himself with a butcher knife and made threats toward Scarberry and Simmons. A few moments later, she said, Scarberry jumped toward Harris, Harris stabbed Scarberry in the back, and he fell to the bed and died. (RP, at 010).

---

[5] In addition, the state statute on evidence tampering refers only to physical evidence. N.M.S.A. (1978) § 30-22-5.

28. At trial, Simmons testified that Harris "busted in" the back door to her trailer on March 8, 1996. She was lying on the bed with Paul Scarberry at the time. She said that the lock was broken on that door, and it had been rigged up with a wire and two knives to keep it closed. She testified that Harris came "flying through" the door, then shut it and stood in front of the door, not far from where Simmons and Scarberry were seated on the bed. She said that Harris then told them to be quiet, and that they needed to discuss the situation. At that point, Simmons said, Scarberry jumped at Harris and the next thing she knew, there was blood everywhere, Harris was standing with a bloody knife in his hand, and Scarberry fell back onto the bed, where he died. She assumed that Harris got the knife from the door. (Record Proper, State v. Harris, Cr. No. 96-157 (Chaves County), Jury Trial Cassette Tape 11, at 37.06 to 46.18).[6]

29. The Court sees little difference between Simmons' statement related in Officer Burcar's affidavit, and her testimony at trial. If anything, the statement given to the police is more incriminating than the trial testimony, in that it includes allegations that Harris made threatening gestures toward Scarberry and Simmons. Harris has not presented any evidence that Simmons made a statement to police different from the one recited in the affidavit, nor has he shown that the prosecutor induced or knowingly used perjured testimony at trial. This showing falls short of proving prosecutorial misconduct. It was for the jury to determine the credibility of Simmons' testimony. Tapia, *supra.*

### Trial Court's Refusal to Instruct on Voluntary Manslaughter

30. In Claim Three of the petition, Harris raises an issue that was resolved by the New

---

[6] Trial tapes will hereafter be referred to in the form: Tape 11, at 37.06 to 46.18." The tapes were played on a Sony BM-75 Dictator/Transcriber, which has approximately 47.00 counters per tape.

11

Mexico Court of Appeals on direct appeal of his conviction. He asserts that he was deprived of due process and a fair trial when the trial court refused to give a jury instruction on voluntary manslaughter. He argues that such an instruction was justified in light of evidence showing that: Harris did not go into the residence armed nor with an intent to kill Scarberry; he had the knife in his hand not to injure Scarberry, but for the purpose of closing the door to the bedroom, when Scarberry attacked him; it was necessary to "jam the knife back into the slot" in order to close the door and it was while he was engaged in this endeavor that Scarberry attacked him; and these circumstances were confirmed by the testimony of Ms. Simmons, who complained about cold air coming through the open door. (Petition, at 9).

31. The Court of Appeals cited State v. Marquez, 96 N.M. 746, 747, 634 P.2d 1298, 1299 (Ct. App. 1981), to support its holding that a defendant is not entitled to an instruction on voluntary manslaughter unless the evidence supports the elements of this crime. The court then went on to outline the evidence presented at Harris's trial:

> In this case, Defendant illegally entered the home of Ms. Simmons. Ms. Simmons was lying on the bed with the victim [Scarberry] when Defendant "came flying through the door," told her to be quiet, and told the victim to sit there and "let's talk this over." The victim attacked Defendant, and Defendant stabbed him with one of two knives that were used to keep the bedroom door shut. Defendant took the victim's body and left it in a field.

(Ex. B to Answer, at 2). The court of appeals noted that Marquez controls this case, "both on the law and on the facts," and held that the trial court did not err in refusing to give an instruction on manslaughter. The court noted that the evidence showed Scarberry had a right to be in Ms. Simmons's house and Harris did not, and Scarberry had a right to defend himself against Harris' illegal entry; Scarberry's attack against Harris, therefore, was not provocation adequate to reduce

12

murder to manslaughter, as a matter of law. (Ex. B to Answer, at 2-3).

32. This holding is based on New Mexico law and implicates no constitutional rights. Federal habeas corpus courts are generally bound by state courts' interpretation of state law, since "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991). Errors in jury instructions, involving only state law, generally may not form the basis for federal habeas relief, Gilmore v. Taylor, 508 U.S. 333, 344, 113 S.Ct. 2112, 2119 (1993); Nance v. Nelson, 60 F.3d 837 (Table, text in Westlaw), No. 94-3389, 1995 WL 380803, at *5 (10th Cir. June 21, 1995), and "federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of the state except in extreme cases." McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir. 1992).

33. This case presents no extreme circumstances justifying federal intervention. The New Mexico jury instruction on voluntary manslaughter, which Harris contends should have been given in this case, states that " The difference between second degree murder and voluntary manslaughter is sufficient provocation . . . Sufficient provocation reduces second degree murder to voluntary manslaughter." U.J.I. 14-220, N.M.R.A. (2000). Voluntary manslaughter is a lesser included offense to second degree murder only if there is evidence to show provocation, State v. Rose, 79 N.M. 277, 442 P.2d 589 (1968), and the instruction should not be given when the evidence would not support a finding of sufficient provocation. State v. Trujillo, 27 N.M. 594, 203 P. 846 (1921).

34. In this case, the New Mexico Court of Appeals cited Marquez, *supra*, in holding that "the exercise of a legal right, no matter how offensive, is not provocation adequate to reduce murder to manslaughter." (Ex. B to Answer, at 2-3). The court found that it was Harris' illegal entry which

provoked Scarberry's justified attack, and Scarberry's attack therefore was "not adequate provocation in the legal sense." This holding is entitled to deference by the federal court. Indeed, "a federal court is precluded from granting habeas relief on any claim adjudicated on the merits by the state court," unless the state decision was contrary to clearly established Federal law, or was based on an unreasonable determination of the facts in light of the evidence. Smallwood, at1264-65. The New Mexico Court of Appeals found that "the trial court did not err in refusing to give an instruction on manslaughter," and this Court cannot say that this decision was unreasonable or contrary to federal law.

### **Ineffective Assistance of Counsel in Failing to Use Exculpatory Evidence**

35. Harris contends in Claim Five that he was denied effective assistance of counsel in that his attorney was aware of, but refused to use at trial, any of the evidence showing: (1) that Harris acted in self-defense when he killed Scarberry; (2) that the incident took place at Harris' own residence (thus negating an element of the breaking and entering charge); (3) that Harris did not go to the residence with intent to kill; and (4) that Harris did not hold Simmons hostage but rather lived with her amicably during the two week period following Scarberry's death, and she was free to come and go as she pleased.

36. To prevail on a claim of ineffective assistance of counsel, Harris must allege sufficient facts to show that his attorney's representation fell below an objective standard of reasonableness; he must also establish prejudice by showing a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 2064, 2068 (1984). To establish the performance prong, Harris must overcome the presumption that his trial attorney provided him with

reasonable professional assistance and that counsel's performance could be considered sound trial strategy. Id., at 689; Jackson v. Shanks, at 1319.

37. Harris alleged on direct appeal that there was insufficient evidence to support his conviction for breaking and entering. The New Mexico Court of Appeals held that there was sufficient evidence to support Harris' conviction on this count, based on the fact that he violated a restraining order when he entered the trailer occupied by Ms. Simmons and thus committed an unauthorized entry as defined by state law. (Answer, Ex. B, at 5).

38. Claims involving state court interpretations of state law are not cognizable in federal habeas proceedings, Estelle v. McGuire, *supra*, and in any case, this Court finds no basis for an ineffective assistance charge on this ground. Any evidence that Harris may have had an ownership interest in the mobile home would have been irrelevant, given fact that he had been ordered by a court to stay away from the property, and therefore any failure of his attorney to introduce such evidence would not have prejudiced his defense.. In addition, Harris testified in his own behalf at trial and admitted that he forced entry into Simmons' home (Tape 21, at 32.05 to 34.05), and the evidence was uncontroverted that he was under a restraining order at the time of entry.

39. Harris alleges also that his attorney failed to use evidence that Simmons was not a hostage but rather lived with him willingly after Scarberry's death. As noted above, Simmons' status as a hostage, or a victim of false imprisonment, is not relevant to any charge for which Harris was convicted. Therefore, any failure by his attorney to use evidence showing that Simmons was not a hostage would not have changed the verdict and does not constitute grounds for habeas relief.

40. Harris also contends that his attorney refused to use evidence at trial showing that he did not have an intent to kill at the time he entered Simmons' residence. Harris was originally charged

with aggravated burglary under N.M.S.A. (1978) § 30-16-4, which requires that the defendant make an unauthorized entry into a dwelling with the intent to commit a felony therein. Harris was not convicted of aggravated burglary, however, but of breaking and entering under N.M.S.A. (1978) § 30-14-8. This crime requires only unauthorized entry; defendant's intent in making the entry is not an element of the crime. Therefore, counsel's performance would not be ineffective with regard to the charge of breaking and entering, even if he had failed to introduce evidence regarding Harris' intent upon breaking into Simmons' residence.

41. To the extent that Harris argues that his intent in entering the residence is relevant to the state of mind necessary for a murder conviction, the record does not support Harris' assertion that his attorney failed to introduce evidence that he did not intend to kill Scarberry when he broke into the trailer. On direct examination, Harris testified that, when he went to the trailer on the morning of March 8, he did not go there with the intention of killing Paul Scarberry. Rather, he said at one point, he went there to "see what's going on with Paul and Mary" (Tape 21, at 42.25 to 42.35), and at another point, he denied he went to the trailer intending to kill Scarberry; instead, he said he "went there with the idea of kicking his ass; that was the idea I had about Paul. And then I was going to get Mary straight." (Tape 22, at 15.05 to 15.28).

42. Finally, Harris argues that his attorney failed to use evidence that Harris acted in self-defense when he stabbed Paul Scarberry. Again, this allegation is not supported by the record. The only two people who could have testified about what happened during the stabbing are Simmons and Harris. Defense counsel had Harris take the stand and questioned him about the events of that morning. Harris had a full opportunity to explain to the jury his version of the incident. (See generally Tapes 21-23). Harris testified that he entered the trailer and told Simmons and Scarberry

16

to sit down so they could have a talk. Simmons complained of the cold coming in through the open door, and Harris said he turned around and had his back to Scarberry as he tried to jam the knife back in the door to keep it closed when, the next thing he knew, Scarberry was "wrapped all around me." He said that in the struggle, he managed to stab Scarberry in the back, and he was allowed to demonstrate the sequence of events for the jury. (Tape 22, at 0.32 to 4.10).

43. Harris does not explain how his attorney could have introduced any other evidence of self-defense. There were no other eyewitnesses, and if Harris knew of other witnesses or evidence that his attorney could have presented, he does not give any specifics in his petition. The Court notes also that Harris' attorney was successful in getting acquittals on two of the counts and in convincing the jury not to convict Harris on the charge of first degree murder. The allegations of ineffective assistance are not supported by the record.

### Double Jeopardy

44. Harris asserts in Claim Six that his conviction violated the protection against double jeopardy, in that he was subject to successive prosecutions and multiple punishment based on the same conduct. He claims he was punished, first, for contempt in violating a restraining order forbidding him from entering Ms. Simmons' residence and, second, for breaking and entering. Harris raised this issue on direct appeal, and the New Mexico Court of Appeals found there was no double jeopardy violation.

45. The double jeopardy clause prohibits successive prosecutions for the same offense, and multiple punishments for a single offense. United States v. Dixon, 509 U.S. 688, 695-96, 113 S. Ct. 2849, 2855 (1993). When a double jeopardy claim is raised on federal habeas corpus review, "although we are not bound by state court rulings on ultimate constitutional questions, we should

17

defer to a state court's interpretation of state law in determining whether an incident constitutes one or more than one offense for double jeopardy purposes." Thomas v. Kerby, 44 F.3d 884, 887 (10th Cir. 1995).

46. The Tenth Circuit applies the "same elements" test of Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180 (1932) to double jeopardy claims in habeas corpus petitions where the same act or transaction was used to support two offenses. Mansfield v. Champion, 992 F.2d 1098, 1100 (10th Cir. 1993). The relevant test is whether each statute requires proof of a fact that the other does not, and "[t]his determination does not involve consideration of the particular facts of a case." Price v. Barreras, 132 F.3d 43 (Table, text in Westlaw), No. 97-2155, 1997 WL 785520, at *1 (10th Cir. Dec. 22, 1997), *cert. denied*, 523 U.S. 1128, 118 S. Ct. 1816 (1998).

47. The New Mexico Court of Appeals applied the Blockburger test in this case, noting that it is to be used in multiple-prosecution, as well as multiple-punishment cases, as the Supreme Court held in Dixon, 509 U.S. at 696. The state court of appeals compared the elements of breaking and entering with "the elements of the order violation" and found that each offense contains an element that the other does not; thus, "[it] follows that Defendant's right to be free from double jeopardy was not violated by the successive prosecutions for contempt and for breaking and entering." (Ex. B to Answer, at 6-7).

48. This case does not involve two separate criminal statutes, but rather a criminal statute and contempt for violating a restraining order. In a similar situation, the New Mexico Court of Appeals held that there was no double jeopardy violation where a defendant was punished for contempt of a domestic violence order, and subsequently indicted for stalking and harassment based on the same conduct. State v. Gonzales, 123 N.M. 337, 940 P.2d 185 (Ct. App. 1997). The court

18

held that the proper test is not whether the same incident underlies both the contempt conviction and the criminal indictment, but rather the Blockburger / Dixon test, in which the court must "examine the elements of the violations of the [restraining] Order and compare those to the elements of the substantive criminal charges." Gonzales, 123 N.M. at 340.

49. In Gonzales, the court found that, by its terms, the restraining order could be violated by the parties talking, visiting, or contacting each other, or by being within 100 yards of each other's home or workplace. The stalking and harassment offenses, by contrast, require other proof, *e.g.*, that the perpetrator intended to place the victim in reasonable apprehension of death or bodily harm or pursued a pattern of conduct intended to annoy, alarm, or terrorize the victim. Thus, the "elements of the Order violation" would require proof of facts not necessary to prove the criminal charges of stalking or harassment, and vice versa. Gonzales, 123 N.M. at 341.

50. In this case, the court of appeals found that Harris was in a situation similar to that in Gonzales, in that he could violate the restraining order "simply by being at the trailer where Ms. Simmons lived," whereas the offense of breaking and entering consists in "the unauthorized entry" of any dwelling, where entry is obtained by breaking or dismantling of the dwelling or of any device used to secure the dwelling." N.M.S.A. 1978 §30-14-8(A). Thus, the court of appeals found that this case was governed by Gonzales and that double jeopardy did not apply.

51. The New Mexico court followed Dixon in holding that "same conduct" is not the proper test for evaluating double jeopardy claims and compared the elements of the two offenses without regard to the actual behavior in the particular case. This approach comports with federal law., as applied in the Tenth Circuit. Mansfield; Price. This Court is precluded from granting habeas relief on any claim adjudicated on the merits by the state court, unless the state decision was contrary to

clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented. <u>Smallwood</u>, at 1264. The decision of the court of appeals was consistent with federal law and reasonable in all respects. Habeas relief is not warranted on this ground.

## **Recommended Disposition**

That the petition be denied, that Harris' Motion for Summary Judgment [Doc. 12] be denied, and that this matter be dismissed with prejudice.

*[signature]*
Lorenzo F. Garcia
United States Magistrate Judge